## Jones v. Commonwealth.

(Decided June 12, 1925.)

### Appeal from Whitley Circuit Court.

1. Homicide—Instruction as to Right to Kill Deceased in Self-Defense Held Not Erroneous.—Instruction as to defendant's right to shoot and kill deceased in self-defense held not erroneous for failure to include an assailant other than deceased.

2. Criminal Law—Instruction as to Reasonable Doubt Not in Statutory Language Held Not Erroneous.—Instruction, that if jury had

"a reasonable doubt from the evidence of the defendant . . . having been proven guilty" it should acquit, held not prejudicial, though it would have been better in language of Criminal Code of Practice, section 238.

3. Criminal Law—In Absence of Affidavit of Newly Discovered Witness, New Trial on Ground of Newly Discovered Evidence Cannot be Obtained.—In absence of affidavit of newly discovered witness, new trial on ground of newly discovered evidence cannot be obtained.

4. Criminal Law—Plat of Premises Involved, Used on Trial of Case, should be Made Part of Record.—Plat of premises involved, used on trial of case, should be part of record under rule 22.

TYE & SILER and R. L. POPE for appellant.

FRANK E. DAUGHERTY, Attorney General, J. C. BIRD and H. C. GILLIS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Charged with the murder of Will Jones, the defendant was convicted of manslaughter, and his punishment fixed at four years in the penitentiary. Defendant shot Will Jones about six o'clock on the evening of Saturday, October 13, 1923. The wounded man died the following day. This shooting occurred at or near New Home church, on Beck's creek, in Whitley county. Quite a crowd of men, women and children had gathered there on that occasion to attend a rally and box supper given for the benefit of the Junior Order of American Mechanics. The deceased was a member of that society, and was its councillor. Both deceased and his son, John, were intoxicated. Deceased had taken quite a prominent part in the exercises; he carried the flag in the parade, and had made a speech or two. In his intoxicated condition, he rather felt his importance and authority.

Near the church there was an old field grown up in sedge, and many of those present had gone into the sedge field, and by looking about had succeeded in finding, as they say, some moonshine whiskey. Deceased seemed to have divided his time between boasting of his patriotism in front of the church and violating his country's laws by keeping and drinking moonshine whiskey in the sedge field behind it.

Defendant, though not a member of this society, attended the gathering. He evidently was a poor man, as he filed his affidavit that he was unable to pay the

cost of the transcript of this record, and this transcript was by order of the court, paid for by Whitley county. As a further evidence of his lack of money, he attended this—apparently quite a social gathering—clad in a suit of overalls. Yet, in spite of his poverty, he owned and brought with him to this gathering, a .38 special Smith & Wesson pistol.

There seems to have been in the hearts of deceased and his son, John, some malice for defendant and his family. This grew out of a punishment inflicted on some of them by one of defendant's sisters, who was a school teacher.

Shortly before the killing, Johnny Jones tried to start a difficulty with the father of defendant. That old man was sober and wisely avoided it, but in the course of fifteen or twenty minutes, John Jones sought a quarrel with Jim Jones, a brother of defendant; but Jim was sober, and as a result of his discretion and the advice of parties who were present, these two agreed to forget their troubles and gave public expression of their good feeling by hugging each other. At that point, defendant came around the hall and seeing his brother and John Jones in this embrace, asked what it meant. Some witnesses say that he undertook to draw his pistol and demanded that everybody stand back. He says that at that point, John Jones released his hold on Jim and John and deceased started after defendant. Defendant running backwards hastily retreated about forty feet, stumbled over a brush pile, and fell on his back. It was so dark at that time that it was impossible to recognize any one a few feet away, hence what happened next is not well known, but at or about the time he fell, defendant shot Will Jones. He says that was the only shot he fired, and that at the time he fired it, he was on his back, John Jones was on top of him, and the deceased was cutting at defendant with a knife. He says he only fired one shot, and from the evidence about the examination of his pistol that appears to be true, but other witnesses say that he fired two shots, and there is some evidence that three shots were fired. One or two witnesses testified that they saw blazes coming from the direction of the church and blazes going in the opposite direction. All the shooting happened in a very brief space of time, and at the conclusion of the shooting, the deceased was shot in the abdomen from which he died, Jim Jones was shot through the heart, from which he

died instantly, and John Jones was shot in the leg, from which wound he recovered. There are witnesses who testified that at the time he was shot, deceased was standing up some distance from defendant, and was begging him not to shoot. Fifty-six witnesses testified in the case, some of them being recalled a time or two, and they came very near to telling the story in fifty-six different ways. Under the circumstances, the jury could not have believed all of them, and, unfortunately for defendant, it believed the account of the shooting that fixed the culpability upon him. There was abundant evidence to support the verdict, although we must admit that the numerical weight of the evidence would apparently excuse defendant's action.

In his motion and grounds for new trial, he says that the court failed to properly instruct the jury. The fourth instruction given by the court is as follows:

"Although you may believe from the evidence in this case beyond a reasonable doubt that the defendant, Ed Moss Jones, shot with a pistol loaded with powder, leaden balls or other hard and explosive substances, the deceased, Will Jones, from which shooting the said Will Jones did then and there presently die, yet, if you shall further believe from the evidence that at the time he so shot and killed the said Will Jones, he, the defendant, Ed Moss Jones, believed and had reasonable grounds to believe that he was then and there in imminent danger of death or of the infliction of some great bodily harm at the hands of said Will Jones or at the hands of Johnny Jones, and that it was necessary, or was believed by the defendant, Ed Moss Jones, in the exercise of a reasonable judgment to be necessary to shoot, and wound or kill the said Will Jones to avert that danger, real or to the defendant reasonably apparent, then you will find the defendant, Ed Moss Jones, not guilty on the ground of self-defense or apparent necessity therefor."

Defendant insists that after the name "Will Jones" and before the words, "to avert," the court should have added "and John Jones," thus saying to the jury that the defendant had the right to shoot and wound or kill both Will Jones and John Jones, to avert that danger;

but a sufficient answer to this is that the defendant was not on trial for shooting John Jones. He also complains of instruction No. 6, which is as follows:

> "If you have a reasonable doubt from the evidence of the defendant, Ed Moss Jones, having been proven guilty, then you will give him the benefit of such doubt and find him not guilty."

We are unable to see how he was in any manner prejudiced by this instruction. It would have been better if the court had followed the language of section 238, Criminal Code. This is something which this court has said over and over again, as will be seen by reference to the notes under that section. Defendant also asks for a new trial upon the ground of newly discovered evidence, but he failed to file the affidavit of the newly discovered witness, hence this cannot avail him.

Upon the trial of this case there was used a plat of the premises, which had been made by the surveyor of Whitley county. Doubtlessly, this map was of assistance to the court and jury, but it was not made a part of the record, as required by our rule 22, and it has proven very confusing to this court.

The judgment is affirmed.